UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **DIANNE OLIVIER** | * | **CIVIL ACTION NO. 12-2570** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

### REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Dianne Olivier, born February 9, 1957, filed applications for a period of disability and Medicare Only (Medicare Qualified Government Employee) on July 15, 2010, alleging disability as of February 7, 2008, due to rheumatoid arthritis and lumbar disc degeneration.[1]

### FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability.

---

[1] Claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2013 for Medicare only.  (Tr. 31).  Thus, claimant must establish disability on or before that date in order to be entitled to a period of disability and Medicare only.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:

**(1) Records from Iberia General Hospital dated March 11, 2008**.

Claimant was admitted for rheumatoid arthritis. (Tr. 159). Knee x-rays showed mild degenerative changes. (Tr. 160). Hand x-rays showed nonspecific cystic changes within the distal aspect of the proximal phalanx of the third digit of the right hand. (Tr. 161). Lumbar spine views revealed mild degenerative changes in the lower lumbar spine with a questionable left spondylolysis at L6. (Tr. 162).

**(2) Records from Dr. Bernard Hojaili dated December 15, 2008 to January 29, 2011**. On December 15, 2008, claimant was seen for rheumatoid arthritis. (Tr. 180). She complained of morning stiffness lasting less than 30 minutes. Her condition was stable. Medications included Plaquenil, Methotrexate, Flexeril, and Etodolac.

On examination, claimant was 66 inches tall and weighed 180.5 pounds. Her blood pressure was 114/78. On a scale of 0 to 10, her pain level was 5.

Claimant's digits/nails were within normal limits. (Tr. 181). She had normal muscle strength in all extremities. She had no tenderness in any joints, and

range of motion was not affected.

Dr. Hojaili's diagnosis was rheumatoid arthritis. He prescribed Folic Acid tablets.

On February 17, 2009, claimant reported morning stiffness of less than 30 minutes. (Tr. 177). All examinations, including musculoskeletal, endocrine, hematologic/lymphatic, skin, and extremities, were within normal limits. (Tr. 178-79). Her blood pressure was 134/85. She was prescribed Voltaren topical gel. (Tr. 179).

On May 19, 2009, claimant's pain was 4 out of 10, and her morning stiffness was less than 30 minutes. (Tr. 173). Her examination was within normal limits. (Tr. 173, 175). She was prescribed Flexeril. (Tr. 176).

Claimant's pain level on August 18, 2009, was 5 out of 10. (Tr. 170). She was prescribed Soma and Naproxen. (Tr. 172).

On March 17, 2010, claimant's pain was 0 out of 10. (Tr. 167). Her examination was within normal limits. (Tr. 167-69). She was prescribed Methotrexate and Folic Acid. (Tr. 169).

Claimant's pain on August 24, 2010, was 5 out of 10. (Tr. 203). Her morning stiffness was more than one hour. Her condition was worsening. She

complained of pain in her MCP and PIP joints, shoulders, and knees, and tenderness in her MCP and PIP joints, wrist, and knees. (Tr. 205).

The assessment was rheumatoid arthritis, disc degeneration NOS, and fibromyalgia. Claimant was prescribed Soma, Naproxen, and Paquenil. Dr. Hojaili opined that claimant was unable to work because of her pain.

On December 14, 2010, claimant's pain was 0 out of 10. (Tr. 196). Her morning stiffness was less than 30 minutes. Her condition was improving. She complained of pain and tenderness in her MCP and PIP joints. (Tr. 196, 198).

Dr. Hojaili reported that claimant's flare up had improved with treatment. (Tr. 196). He added Flexeril and Medrol tablet. (Tr. 202).

In the Medical Source Statement of Ability to do Work-Related Activities dated January 29, 2011, Dr. Hojaili checked that claimant could lift up to 10 pounds occasionally; sit for two hours without interruption; stand/walk for 15 minutes without interruption; sit for three hours over an eight-hour period; stand/walk for one hour over an eight-hour period; did not require the use of a cane to ambulate; needed to elevate her leg intermittently to relieve pain, swelling, or other symptoms; needed to take unscheduled breaks every hour for 15 minutes during a working day due to pain, fatigue, and adverse effects of medication; needed to miss work or leave work early at least three times a month; had side

effects of drowsiness/sedation from medication, and was limited as to handling and fingering. (Tr. 209-10). He checked that her limitations had changed markedly since March 7, 2008. (Tr. 210).

**(3) Claimant's Administrative Hearing Testimony**. At the hearing on February 10, 2011, claimant testified that she stopped working because she was having knee problems and could no longer lift at least 50 pounds as required by her job as a cafeteria cook. (Tr. 9). She stated that she had not looked for work because she could not stand or sit for too long. (Tr. 10). She reported that she had received disability retirement from the school board.[2]

As to complaints, claimant testified that she had problems with her hands, neck, and back. (Tr. 12). She stated that her doctor had added some more medications. She reported that she did not notice any side effects from her new medications, but Soma, muscle relaxers, and Methotrexate made her drowsy. (Tr. 15).

Regarding daily activities, claimant testified that she dusted and did laundry. (Tr. 11). She said it took her some time to take clothes out of the dryer. She stated that she drove some days. (Tr. 12). She reported that she spent about three to three and a half hours a day in the recliner. (Tr. 15).

---

[2](Tr. 152-53).

As to restrictions, claimant testified that she could stand about 45 minutes to an hour before her back started hurting. (Tr. 12). She said that she could stand about 20 minutes before she had pain in her back, ankles, or feet. (Tr. 13). She stated that she had to change positions every 10 minutes.

Claimant testified that she could spend a total of two hours of day on her feet with breaks. (Tr. 14). Additionally, she stated that she could not sit for more than 20 minutes before her back or the bottoms of her feet started hurting. (Tr. 14).

**(4) Administrative Hearing Testimony of Harris N. Rowzie, Vocational Expert ("VE")**. Mr. Rowzie described claimant's past work as a cafeteria technician/cook as medium with a Specific Vocational Preparation of six. (Tr. 8-9). The ALJ posed a hypothetical in which he asked the VE to assume a claimant who could perform jobs at the light exertional level in which the manipulative requirements were no more than frequent. (Tr. 10). In response, Mr. Rowzie testified that she could work as a ticket taker, of which there were 107,000 positions nationally and 900 statewide, and counter clerk, of which there were 462,000 jobs nationally and 5,600 statewide.

The ALJ took administrative notice of the fact that according to Dr. Hojaili's Medical Source Statement of Ability to do Work-Related Activities,

claimant could not lift more than 10 pounds occasionally, sit no more than three hours, stand/walk no more than one hour, required a 15-minute break every hour at unpredictable intervals, needed to miss work at least three times a month, and was bilaterally limited as to handling and fingering.  (Tr. 11).  The ALJ noted that if this were to be validated by the remainder of the record, then meaningful work activity would not be feasible.

**(5) The ALJ's Findings**.  Claimant argues that the ALJ erred: (1) in failing to properly evaluate the treating source medical opinion of Dr. Hojaili, her treating rheumatologist, under 20 C.F.R. § 404.1527 and SSR 96-2p, and (2) consequently, the ALJ's RFC is not supported by substantial evidence; it lacks any medical support because the ALJ failed to give weight to the sole medical opinion (Dr. Hojaili's) in the record regarding her functional abilities.  Because I find that the ALJ erred in evaluating the opinion of claimant's treating rheumatologist, as well in failing to consider the side effects of her medications, I recommend that this case be **REVERSED,** and that claimant be awarded benefits.

The Social Security Listing of Impairments for rheumatoid arthritis is found at § 14.09, which provides as follows:

14.09 Inflammatory arthritis. As described in 14.00D6.[3] With:

A. Persistent inflammation or persistent deformity of:

1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6);[4] or

2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).[5]

---

[3] Section 14.00D6 provides: "a. General. The spectrum of inflammatory arthritis includes a vast array of disorders that differ in cause, course, and outcome. Clinically, inflammation of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or fine and gross movements; there may be joint pain, swelling, and tenderness. The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements. However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in an extreme limitation. . . . c. Inflammatory arthritis involving the peripheral joints. In adults, inflammatory arthritis involving peripheral joints may be associated with disorders such as: (i) Rheumatoid arthritis ..."

[4] Section 14.00C6 provides: "Inability to ambulate effectively has the same meaning as in 1.00B2b." Section 1.00B2b provides: "(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. ...  (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation."

[5] Section 14.00C7 provides: "Inability to perform fine and gross movements effectively has the same meaning as in 1.00B2c."  Section 1.00B2c provides: "Inability to perform fine and

or

B. Inflammation or deformity in one or more major peripheral joints with:

1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

C. Ankylosing spondylitis or other spondyloarthropathies, with:

1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body

---

gross movements effectively means an extreme loss of function of both upper extremities; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level."

systems involved to at least a moderate level of severity.

or

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09.

In evaluating claimant's rheumatoid arthritis, the ALJ considered the criteria of Listing 14.09 of the Listing of Impairments. (Tr. 34). He found that the evidence in the record did not establish that claimant's impairments met or equaled the severity criteria of any listed impairment.

Claimant argues that the ALJ failed to properly evaluate the opinion of her treating rheumatologist, Dr. Hojaili. The record reflects that claimant was diagnosed with rheumatoid arthritis by Dr. Hojaili, who had treated claimant for two years. He opined that claimant was unable to work because of her pain. (Tr. 205).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton,* 209 F.3d at 455 (*citing Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)).

Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Id*.; *Greenspan*, 38 F.3d at 237.

Claimant argues that the ALJ failed to properly evaluate the treating source medical opinion of Dr. Hojaili under 20 C.F.R. § 404.1527 and SSR 96-2p. The ALJ noted that he had considered opinion evidence in accordance with the requirements of § 404.1527 and SSR 96-2p. (Tr. 34). However, he did not follow

the factors set forth by the Fifth Circuit in weighing the treating physician's opinion.

In *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001), the court held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Id*. at 621 (*citing Newton,* 209 F.3d at 456).

Here, the ALJ considered the frequency of examinations performed by Dr. Hojaili. (Tr. 35). He noted that Dr. Hojaili's statement that claimant was unable to work was a conclusory statement that had "no special significance," as such statements were legal conclusions on a matter reserved to the Commissioner. (Tr. 35). Additionally, he found that Dr. Hojaili's opinion was "not supported by the longitudinal evidence of record." (Tr. 35, 36).

However, the ALJ failed to consider the other factors outlined in *Myers* before rejecting Dr. Hojaili's opinion. (Tr. 32-33). This constitutes error.

In the Medical Source Statement of Ability to do Work-Related Activities dated January 29, 2011, Dr. Hojaili opined that claimant could lift up to 10 pounds occasionally; sit two hours without interruption; stand/walk for 15 minutes

without interruption; sit for three hours total over an eight-hour period; stand/walk for one hour total over an eight-hour period; did not require the use of a cane to ambulate; needed to elevate her leg intermittently to relieve pain, swelling, or other symptoms; needed to take unscheduled breaks every hour for 15 minutes during a working day due to pain, fatigue, and adverse effects of medication; needed to miss work or leave work early at least three times a month; had side effects of drowsiness/sedation from medication, and was limited as to handling and fingering. (Tr. 209-10). He further found that her limitations had changed markedly since March 7, 2008. (Tr. 210). There is no other medical evidence in the record to rebut this opinion.

Additionally, the ALJ failed to consider the side effects from claimant's medications. Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (citing 20 C.F.R. § 404.1529(c)(3)(iv)).

At the hearing, claimant testified that her medications made her dizzy and drowsy. (Tr. 15). Dr. Hojaili confirmed that claimant had side effects of drowsiness/sedation from her medications which might have implications for

13

working.  (Tr. 210).  The ALJ did not take the side effects of claimant's medications into consideration, and his failure to do so was error.

Accordingly, it is my recommendation that the Commissioner's decision be **REVERSED**, and the claimant be awarded benefits.  The undersigned recommends that and the claimant is awarded appropriate benefits commencing February 7, 2008, the date of onset of disability.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED**

**PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed December 10, 2013, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

Copy sent: RFD
On:  12/11/2013
By:  MBD